## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Randolph Thomas, Bridgette Palmatierre, and Diane Thomas,** | : | |
| | : | **CIVIL ACTION NO. 3:24-cv-288** |
| **Plaintiffs,** | | |
| **v.** | : | **(JUDGE MANNION)** |
| **Jorge Orozco-Pineda,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

Presently before the court in this diversity jurisdiction, personal injury lawsuit is Defendants' motion for partial summary judgment. (**Doc. 50**).  This case arises from a vehicle accident involving the commercial tractor-trailer driven by Defendant Jorge Orozco-Pineda ("Orozco-Pineda") and the automobile driven by Plaintiff Randolph Thomas with Plaintiff Bridgette Palmatierre ("Plaintiffs") as his passenger. (Am. Compl. ¶ 10). At all times relevant to this accident, Defendant Orozco-Pineda was providing services for Defendant Food Haulers, Inc. ("Food Haulers") as an owner-operator under contract while operating a semi-truck owned by Defendant Henry Lopez-Calleja ("Lopez-Calleja"). (Pl.'s First Stmt. of Facts ¶ 5). Defendants bring the instant motion requesting partial summary judgment on Plaintiffs' claims for punitive damages and loss of consortium claim. Based on the discussion below, Defendants' motion will be granted.

## I.    **Background** [1]

On the night of February 28, 2022, Randolph Thomas and Bridgette Palmatierre were traveling ahead of Orozco-Pineda on southbound I-81 in Scott Township, Lackawanna County, Pennsylvania. (Pl.'s First Stmt. of Facts ¶¶ 1-4). Randolph Thomas was operating a pickup truck with a horse trailer attached, accompanied by his passenger Bridgette Palmatierre. (*Id*.). Orozco-Pineda was operating a commercial tractor-trailer owned by Lopez-Calleja, as a contracting agent of Food Haulers. (*Id*. ¶ 5; Am. Compl. ¶ 10). At some point thereafter, Orozco-Pineda's tractor-trailer collided with the back of the horse trailer attached to Randolph Thomas's pickup truck. (Pl.'s First Stmt. of Facts ¶ 6).

The collision occurred immediately after a curve on Interstate 81, allegedly obstructing Orozco-Pineda's view of Randolph Thomas's pickup truck. (*Id*. ¶¶ 8,13). The posted speed limit where the accident occurred was 65 mph, and the conditions of the road were clean. (*Id*. ¶¶ 7,8). According to his own testimony, Randolph Thomas was traveling around 45 mph at the time of the accident in order to prepare for the nearest exit due to complications with his vehicle. (*Id*. ¶ 3). The speed in which Orozco-Pineda

---

[1] The background of this case is taken from the factual allegations set forth in Plaintiffs' amended complaint (Doc. 21) as well as the undisputed material facts accompanying Plaintiffs' brief in opposition (Doc. 54).

was traveling prior to the collision is disputed by both parties. On one side, Defendants claim that Orozco-Pineda was driving well below the speed limit prior to the collision, as evidenced by Motive GPS data. (*Id*. ¶¶ 9,10). On the other side, through the deposition testimony of a non-party witness, Morris Stith, who allegedly saw Orozco-Pineda's tractor-trailer pass his own vehicle moments before the collision, Plaintiffs claim that Orozco-Pineda was driving approximately 80 mph. (*Id*.).

Randolph Thomas and Bridgette Palmatierre commenced this action on February 16, 2024, alleging that Orozco-Pineda was acting with negligence and gross negligence while operating the tractor-trailer causing the collision with Randolph Thomas's motor vehicle. (Doc. 1). Plaintiffs further alleged that Food Haulers and Lopez-Calleja negligently hired, failed to adequately train, and supervise Orozco-Pineda, as well as maintain the tractor-trailer he operated in adequate working condition. (*Id*.).

On March 11, 2024, Defendants filed an answer to the original complaint denying Plaintiffs' claims of negligence and setting forth affirmative defenses. (Doc. 5). On September 30, 2024, Plaintiffs filed an amended complaint adding Diane Thomas, spouse of Randolph Thomas, and setting forth a loss of consortium claim on her behalf. (Am. Compl. ¶ 20). The amended complaint like the original complaint also seeks punitive damages

against Orozco-Pineda as well as Food Haulers and Lopez-Calleja via *respondeat superior*. (*Id*. ¶ 15).

Defendants filed a motion to dismiss on October 9, 2024, seeking dismissal of Plaintiffs' punitive damages claims and loss of consortium claim. (Doc. 22). The court denied Defendants' motion on November 8, 2024, as premature. (Doc. 28).

Defendants now make similar arguments in the instant motion for partial summary judgment, which was filed along with a brief in support on May 28, 2025. (Docs. 50-51). Plaintiffs timely responded to this motion with a brief in opposition and a separate statement of facts (Doc. 53-54), both of which Defendant challenged in the form of a reply pleading. (Doc. 56-57). Subsequently, Plaintiffs filed a motion to strike Defendants reply brief for allegedly presenting new evidence and arguments. (Doc. 60). Plaintiffs also requested an oral argument concerning the instant motion for partial summary judgment, which was conducted on July 29, 2025. (Doc. 70). The motion is now ripe for review.

## II. **Legal Standard**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the nonmoving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *See also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (A court may not weigh the evidence or make credibility determinations.) The court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). But a non-movant "may not prevail merely by discrediting the

credibility of the movant's evidence; it must produce some affirmative evidence." *Anderson,* 477 U.S. at 256–57.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge this burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *See also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The nonmoving party must direct the court's attention to specific, triable facts by "citing particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *See United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *See also DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012)

("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts.")

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

### III.  Discussion

As mentioned above, the instant motion for partial summary judgment is directed at all claims for punitive damages as well as the loss of consortium claim. Defendants' motion, as it relates to the issue of punitive damages, can be divided into two sub-parts. First, Defendants argue that Plaintiffs' claims for punitive damages against the driver, Orozco-Pineda, should be dismissed because the evidence fails to support a claim beyond ordinary negligence. Further, without a viable claim for punitive damages against Orozco-Pineda, it follows that Plaintiffs' punitive claims against Food Haulers and Lopez-Calleja via *respondeat superior* must also be dismissed. Second, Defendants contest any direct punitive claims against Food Haulers and Lopez-Calleja for negligent hiring, training, and supervision, arguing that they

were not alleged in the amended complaint, and even if they were, there is no evidence to support such a claim. Separately, Defendants argue that Diane Thomas's loss of consortium claim must be dismissed because it was not brought within the statute of limitations period. The court will address each of these arguments in turn.

### A. Punitive Damages

We will first discuss Defendants' arguments that all punitive claims should be dismissed. Our analysis on this issue will begin with the punitive claims against Orozco-Pineda and against Food Haulers and Lopez-Calleja through the doctrine of *respondeat superior*. Subsequently, the court will analyze the claims against Food Haulers and Lopez-Calleja for negligent training, hiring, and supervision.

### 1. Punitive Claims against Orozco-Pineda and the Remaining Defendants under *Respondeat Superior*

Defendants first argue that Plaintiffs' claims for punitive damages against Orozco-Pineda should be dismissed, asserting that the evidence demonstrates that he was not speeding or acting recklessly at the time of the accident. (Doc. 51 at 17).

Because this action is before the court based on diversity jurisdiction, state law will determine the legal standard for punitive damages. *See Wright*

*v. Ryobi Tech., Inc*., 175 F. Supp. 3d 439, 455 (E.D. Pa. 2016). Thus, as the Pennsylvania Supreme Court has observed:

> The standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984) (*quoting* Restatement (Second) of Torts §908(2) (1979)); *see also Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. *See SHV Coal, Inc. v. Continental Grain Co*., 526 Pa. 489, 587 A.2d 702, 704 (1991); *Feld*, 485 A.2d at 747–48; *Chambers*, 192 A.2d at 358. *See also* Restatement (Second) of Torts §908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. *Kirkbride v. Lisbon Contractors, Inc*., 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts §908 (1) ( "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.").

*Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 121-22 (2005). Because punitive damages are used as a tool to punish and deter certain conduct, "[t]he state of mind of the actor is vital. *Id*. at 123.  The Defendant's action or inaction must be intentional, reckless or malicious." *Id.* From this legal framework, the Pennsylvania Supreme Court created a two-prong test, explaining:

> [I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

*Hutchison*, 582 Pa. at 124.

As a basis for their punitive claims against Orozco-Pineda, Plaintiffs allege that he acted with reckless indifference by failing to maintain a proper speed and safe distance from other vehicles while operating a tractor trailer. (Am. Compl. ¶ 12). They argue that, as an experienced commercial driver, Orozco-Pineda was aware of the risks associated with excessive speeding yet proceeded to do so on the night of the accident, leading to the collision. (Doc. 53 at 12-13). Further, Plaintiffs argue that, aside from the issue of whether Orozco-Pineda was speeding prior to the accident, a reasonable jury could find that he was reckless in driving too fast for the conditions. (*Id.*

- 10 -

at 17). In support of their claim, Plaintiffs present deposition testimony from a non-party witness, Morris Stith, who allegedly saw Orozco-Pineda driving at an excessive speed moments before the collision. (Doc. 53-3).

Conversely, Defendants argue that the testimony from Morris Stith does not create an issue of fact regarding whether Orozco-Pineda was speeding excessively at the time of the accident, since his testimony reveals that he did not witness the actual collision, but merely saw Orozco-Pineda 15 to 20 seconds prior to the collision. (Doc. 51 at 17). Further, and contrary to Stith's testimony, Defendants argue that the GPS-derived vehicle data produced by the Motive platform, tracking Orozco-Pineda's speed on the night of the accident, demonstrates that he was traveling well below the posted speed limit prior to the collision. (*Id*. at 18). Given these facts, Defendants argue that Plaintiffs have failed to present a genuine issue of fact, as they failed to provide any evidence supporting the allegation that Orozco-Pineda was speeding *at the time* of the collision. (*Id*. at 17). They further assert given that Plaintiffs' claims for punitive damages against Orozco-Pineda rest solely on the allegation of speeding, there is no remaining basis for punitive damages. (*Id*. at 19). Further, to the extent that the court does find a genuine issue of fact regarding speeding, Defendants

maintain that speeding alone does not provide support for a claim beyond ordinary negligence. (*Id*.)

In response to Defendants' arguments regarding the Motive data, Plaintiffs make it clear that they "do not broadly dispute the accuracy of Motive data." (Doc. 53 at 16). Instead, they contest Defendants' interpretation that the data rules out any possibility that Orozco-Pineda was speeding prior to the accident. For example, consistent with testimony from Plaintiffs' expert, they argue that surges in speed may not be captured by the Motive data because "the data offers isolated still frames, not a full-motion depiction of the vehicle's speed." (*Id*. at 14-15). Additionally, Plaintiffs allege that the data may be "vulnerable to user tampering", another factor that could allow a reasonable jury to find that Orozco-Pineda was speeding despite the Motive data.[2] (*Id*. at 16).

On the surface, there appears to be a genuine issue of fact as to whether Orozco-Pineda was driving at an excessive speed prior to the accident. On one hand,  Plaintiffs argue that Morris Stith's testimony, along

---

[2] Plaintiffs have not submitted any evidence to support their suggestion that the Motive data may have been tampered with. In fact, Plaintiffs rely on the same Motive date as evidence that Orozco-Pineda had a history of speeding. (Doc. 53 at 21). Since both parties rely on the Motive data in their briefs, and Plaintiffs have not offered any evidence to dispute its accuracy, the court will accept the data as accurate.

with the gaps in the Motive data, is enough to turn the issue into one for a jury to decide. On the other hand, Defendants argue that the Motive data, coupled with the fact that Stith's testimony references Orozco-Pineda's speed at some time *prior* to the collision, clearly resolves the issue in their favor. However, while it is not the court's role to weigh the conflicting evidence at the summary judgment stage, it is obligated to evaluate whether the dispute presented by the evidence is genuine. Upon doing so, the court finds that the dispute is not, in reality, a genuine one.

During his deposition, Morris Stith testified that he was driving his own truck on I-81 at 71 mph at the moment he saw Orozco-Pineda pass him, leaving him with the conclusion that Orozco-Pineda "had to be going a little bit over" 71 mph. (Doc. 51-5 at 3). Stith further testified that Orozco-Pineda drove past him roughly 10-20 seconds before the accident occurred, but did not actually see the collision. (*Id.* at 5).[3] When asked whether Orozco-Pineda was traveling 80 mph, Stith responded by saying, "[i]f he wasn't, he was close to it." (Doc. 53-3 at 9-10).

Generally, despite its speculative nature, Stith's testimony would be afforded a favorable inference over Defendants' conflicting evidence.

---

[3] Morris Stith states that he saw Orozco-Pineda 15-20 seconds before the collision, but later in the deposition he testifies that it was about 10 or 11 seconds.

However, where one party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Galovich v. Morrissette*, Civ. No. 21-1532, 2024 WL 2962843, at *6 (M.D. Pa. June 12, 2024). An obvious contradiction of this nature appears in the record submitted to the court.

Specifically, the Motive GPS data—provided by an unbiased third-party source—indicates that Orozco-Pineda traveled within the speed limit prior to the accident. (Doc. 72). In fact, the data indicates that he maintained a speed below 65 mph for the entire twenty-five minutes leading up to the accident. (*Id.*). While it is true, as Plaintiffs indicate in their brief, that this Motive data captured Orozco-Pineda's speed in snapshots, leaving gaps of data in between each instance of recorded speed, it would be unreasonable for a jury to accept Plaintiffs' theory that the "excessive speeding" occurred solely during these undetected gaps. For example, according to the Motive data, of the six separate snapshots captured at 2:14 a.m., the fastest that Orozco-Pineda was traveling was 55 mph. (*Id.*). Subsequently, the two snapshots recorded at 2:15 a.m. indicate a speed of 54 mph and 57.5 mph. (*Id.*). Most significantly, however, are the eight snapshots captured during 2:16 a.m., the minute leading up to the crash. The first recorded speed during

this minute has Orozco-Pineda traveling 52.6 mph, followed by 45.3 mph, 39.5 mph, 36 mph, 30.1 mph, 23.2 mph, 26.5 mph, and 26 mph, showing a clear deceleration. (*Id*.). At 2:17 a.m., the only recorded speed before the collision is 26 mph.[4] (*Id*.).  From this information, the idea that Orozco-Pineda managed to accelerate his multi-ton semi-tractor trailer to such an excessive speed during the multi-second gaps of time in between each recording, only to dramatically decelerate to speeds well below the speed limit just in time for the next snapshot, is wholly untenable. And while Plaintiffs' eyewitness testimony appears to support this incredible theory, it clearly falls short of satisfying the heightened burden of proof required for a punitive damages claim. *See Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005) (stating that a plaintiff is required to meet a far lesser burden to establish a negligence claim compared to a punitive damages claim).

Plaintiffs maintain that, even if Orozco-Pineda was driving below the speed limit, his "failure to perceive a vehicle with flashing lights in the dark," coupled with the fact that he was "driving too fast for the conditions," supports

---

[4] The second recorded speed at 2:17 a.m. was 0 mph, reflecting the immediate halt from the collision. This is evident from the Motive data, indicating that Orozco-Pineda's trailer remained on I-81 for at least six hours at a speed of 0 mph. (Doc. 72).

a finding of recklessness. (Doc. 53 at 18). The court finds this alternative argument unpersuasive.

Although the stipulated facts on the record indicate that the conditions of the road were clear and clean, Plaintiffs maintain that Orozco-Pineda was reckless in driving too fast while entering the obstructed curve in the highway during the night. (Doc. 53 at 18). In support of their argument, Plaintiffs refer to *Burke v. Transam Trucking, Inc.,* 605 F.Supp.2d 647, 649 (M.D. Pa. 2009), where the court denied summary judgment on punitive damages based upon allegations of traveling 55 miles per hour in a 35 miles per hour zone while approaching an obstructed curve. However, this holding was made in light of sufficient evidence that the defendant was exceeding the speed limit by 20 mph, and as the court concluded above, Plaintiffs have failed to provide sufficient evidence that Orozco-Pineda was excessively speeding. In any event, the court rejects the argument that a curve in the highway constitutes a "condition" requiring speeds under the posted limit, and to the extent that *Burke* has been interpreted in such a way, this case—along with many others cited by both parties—is not binding on the court. Nonetheless, the court finds many of their holdings persuasive, including the general rule that "negligent speeding, failure to properly signal, and failure to properly observe roadways does not warrant punitive damages." *Carson v. Tucker*, Civ. A. No.

5:20-CV-00399, 2020 WL 4015244, at *4  (E.D. Pa. July 16, 2020) (quoting *Babenko v. Dillon*, No. 5:19-cv-00199, 2019 WL 3548833, *3 (E.D. Pa. Aug. 5, 2019)).

To clarify, this discussion is not to suggest that Orozco-Pineda could not have exceeded the speed limit at some point prior to the collision, or that his actions were not negligent. Rather, the court is simply holding that Plaintiffs have failed to produce sufficient evidence to support their claim that Orozco-Pineda was speeding in such an excessive manner as to warrant punitive damages. Aside from this issue, what remains are merely allegations of ordinary negligence, and certainly nothing that could be considered "particularly outrageous" or "egregious" conduct. *See Phillips*, 883 A.2d at 446. Accordingly, the court will dismiss Plaintiffs' claims for punitive damages against Orozco-Pineda.

Further, without sufficient evidence to support the punitive claims against Orozco-Pineda, it follows that Plaintiffs' punitive claims against Food Haulers and Lopez-Calleja solely on the basis of *respondeat superior* must also be dismissed.

### 2.  Negligent Hiring, Training, and Supervision

Turning to Plaintiffs' claims for negligent hiring, training, and supervision, the court agrees with Defendants that Plaintiffs' amended

complaint fails to allege a claim for punitive damages. Despite Plaintiffs' argument to the contrary, the amended complaint merely alleges ordinary negligence against Food Haulers and Lopez-Calleja for negligent hiring, training, and supervision. (Am. Compl. ¶ 13-14). The only punitive claims against these Defendants are based on a theory of vicarious liability, to wit:

> Plaintiffs charge and allege that Defendant, Jorge Or[o]zco-Pineda, is liable for the following acts and/or omissions of common law negligence and gross negligence, which were a direct and proximate cause of Plaintiffs' injuries and resulting damages which acts of negligence and gross negligence should be imputed to Food Haulers, Inc, and Mr. Calle[j]a.

(*Id*. ¶ 15). Further, the amended complaint fails to include any facts suggesting that Defendants acted recklessly or maliciously in their hiring, training and supervision of Orozco-Pineda. *See Boring v. Google Inc*., 362 Fed.Appx. 273, 283 (3d Cir. 2010) (dismissing claims for punitive damages where there was simply "no foundation" to support them in the complaint).

Plaintiffs argue that the court should reject this "pleading attack" since it was "already denied" in the court's previous memorandum denying Defendants' motion to dismiss Plaintiffs' claims for punitive damages. (Doc. 53 at 23). This argument is flawed for several reasons. Most notably, it mischaracterizes Defendants' motion to dismiss, which was directed at the

- 18 -

punitive claims against Orozco-Pineda and the remaining Defendants via *respondeat superior*. Defendants had no basis to seek dismissal of punitive claims related to negligent training, hiring, and supervision, since they were never alleged in the amended complaint. In fact, Defendants' statement in their instant motion that, "Plaintiffs *may also claim* that they have demanded punitive damages" on the basis of negligent hiring, training, and supervision, reflects their uncertainty as to whether Plaintiffs even intended to assert such a claim. (*Id*. at 21). Nonetheless, Defendants' motion to dismiss was denied as premature, and the issue of whether Plaintiffs had properly alleged punitive claims on the basis of negligent hiring, training and supervision was not one that was presented to the court.

Plaintiffs' alternatively request leave to amend for the second time in order to include these punitive claims. As evidence that Defendants engaged in outrageous conduct warranting punitive damages, Plaintiffs contend that "thousands of speeding alerts" involving Orozco-Pineda during his time driving for Food Haulers were repeatedly ignored, and that these speeding alerts are directly related to the subject collision. (*Id*. at 29). They further argue that Food Haulers allowed Orozco-Pineda and its contractors to operate without a governor despite their own employees using them. (*Id*.)

Even accepting Plaintiffs' allegations as true, the court disagrees that they bear any relation to the collision. As previously concluded, Plaintiffs have failed to present sufficient evidence that excessive speeding was the cause of the accident. Thus, as Defendants correctly point out, there is no nexus between evidence of Orozco-Pineda's prior speeding record and the conduct leading to the accident. *See Achey v. Crete Carrier Corp*., No. 07-cv-3592, 2009 WL 9083282 (E.D. Pa. Mar. 30, 2009) (dismissing punitive claims against corporate defendant when there was no nexus between the employee's commercial driving violations and his conduct on the day of the accident); *see also Ditzler v. Wesolowski,* No. 05–325, 2007 WL 2253596, at *7 (M.D.Pa. Aug.3, 2007) (past acts can only be a proper basis upon which punitive damages may be awarded if they are substantial factors in bringing about harm to plaintiff). Accordingly, any leave to amend to insert punitive claims for negligent hiring, training, and supervision would be futile.

Finally, while there does remain ordinary negligent hiring, training and supervision claims against Lopez-Calleja and Food Haulers, Defendants argue that they should be dismissed in light of the viable *respondeat superior* claims.

Defendants' argument refers to the proposition supported by several non-binding cases that:

> Nothing can be gained from [allowing both direct and indirect
> claims for employer liability to proceed] when the defendant
> employer has admitted the agency of the driver, and to permit
> the action to proceed on both counts would allow the introduction
> of evidence of prior accidents of the driver, highly prejudicial,
> irrelevant and inadmissible in the cause of action based on the
> imputed negligence of the driver.

*Allen v. Fletcher*, No. 07–722, 2009 WL 1542767, at *5 (M.D. Pa. June 2, 2009) (citing *Holben v. Midwest Emery Freight Sys., Inc*., 525 F.Supp. 1224-25 (W.D.Pa.1981)). Based on this line of reasoning, a majority of courts have dismissed claims for negligent supervision and negligent hiring when a supervisor defendant concedes an agency relationship with the co-defendant. *Fortunato v. May*, 2009 WL 703393, at *5 (W.D.Pa. Mar.16, 2009); *see also Sterner v. Titus Transp., LP*, 2013 WL 6506591, at *3 (M.D.Pa. Dec.12, 2013). These courts have recognized an exception to this rule where there are viable claims for punitive damages against the supervisor defendant. *Fortunato*, 2009 WL 703393, at *5. While the Pennsylvania Supreme Court has yet to speak on the issue, federal district courts in Pennsylvania have overwhelmingly favored this theory, refusing to allow claims for negligent hiring, training, and supervision when (1) the supervisor/employer defendant admits that its employee was acting in the scope of his or her employment at the time of the accident, *and* (2) the

plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant. *Sterner*, 2013 WL 6506591, at *4 (citations, internal citations, and internal quotations omitted).

Here, Food Haulers has admitted the existence of an agency relationship with Orozco-Pineda and Plaintiffs have no viable punitive claims for negligent hiring, training and supervision. However, the extent of Lopez-Calleja's relationship with Orozco-Pineda remains in dispute. Defendants maintain that Lopez-Calleja "owned the vehicle involved in the accident and nothing more". (Doc. 51 at 27). Conversely, Plaintiffs' claim that Orozco-Pineda was also providing services for Lopez-Calleja. (Doc. 54 at 3). Accordingly, the court will only dismiss Plaintiffs' claims for negligent hiring, training, and supervision against Food Haulers.

### B. Plaintiff Diana Thomas' Loss of Consortium Claim

As a separate issue, Defendants argue that Diane Thomas's loss of consortium claims should be dismissed as a matter of law since the claim was brought outside of the two-year statute of limitations period. (Doc 51 at 27). In response, Plaintiffs argue that the discovery rule as applied in *Adams v. Zimmer*, 943 F.3d 159, 163-64 (3d Cir. 2019) saves their claim from being time-barred, given that Diane Thomas was unaware of her injuries until months after the accident. (Doc 53 at 24-25).

In determining which law to apply, this court is bound by the Supreme Court's longstanding *Erie* doctrine, which states that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc*., 518 U.S. 415, 427, (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Statutes of limitations are substantive for *Erie* purposes." *Dixon Ticonderoga Co. v. Est. of O'Connor*, 248 F.3d 151, 160–61 (3d Cir. 2001) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945)). Thus, Pennsylvania's statute of limitations applies here.

"Pursuant to 42 Pa.C.S. §5524, the statute of limitations applicable to loss of consortium claims in Pennsylvania is two years from the date of the injury. Once the statute of limitations has run, the injured party is barred from suing." *Sullivan v. Haywood*, 2015 WL 7356162, at *4 (Pa. Super. Ct. Mar. 16, 2015). However, Pennsylvania courts have recognized the "discovery rule," a tolling mechanism serving as an exception to the general two-year requirement, which Plaintiffs rely on to argue the timeliness of their claim.

Pennsylvania courts generally apply the discovery rule in cases where the plaintiff's "injury or its cause was neither known nor reasonably knowable*." Fine v. Checcio*, 582 Pa. 253, 266 (2005) (citing *Lewey v. H.C. Fricke Coke Co*., 166 Pa. 536, 544 (1895)). Rather than starting from the date of the incident giving rise to the claim, the limitations period under the

discovery rule "begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another." *Adams*, 943 F.3d at 163 (citing *Coleman v. Wyeth Pharms*., 6 A.3d 502, 510–11 (Pa. Super. Ct. 2010)). This two-part analysis is grounded on "inquiry notice" that is tied to "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Gleason v. Borough of Moosic*, 609 Pa. 353, 362 (2011) (citing *Wilson v. El-Daief*, 600 Pa. 161, 178 (2009)). "[T]he determination concerning the plaintiff's awareness of the injury and its cause is fact intensive, and therefore, ordinarily is a question for a jury to decide. However, courts may resolve the matter at the summary judgment stage where reasonable minds could not differ on the subject." *Wilson*, 600 Pa. at 175 (citing *Fine*, 582 Pa. at 268). The party relying on the discovery rule bears the burden of proof. *See Cochran v. GAF Corp.*, 542 Pa. 210, 216 (1995).

Here, the collision injuring Randolph Thomas occurred on February 28, 2022, and loss of consortium claim was not brought until over two and a half years later on September 30, 2024. While filing a consortium claim more than two years after the incident giving rise to that claim—as Plaintiffs did in this

case—does not automatically render it time-barred in light of the discovery rule, Plaintiffs' assertion that Diane Thomas was unaware of her claim until November of 2022, roughly eight months after the accident, is unreasonable. According to deposition transcripts, Randolph testified that he and Diane had not been intimate since the accident had occurred, but prior to the accident, they were intimate with each other "at least four times a week." (Doc. 51-2 at 7). Randolph further testified that before the accident, he used to cook for him and his wife around three times per week, drive her to various places every day, and help out with chores around the house. (*Id*. at 9). Since the accident occurred, Randolph has been unable to drive Diane anywhere, and she now "does all the cooking, all the cleaning." (*Id*.). According to Diane, immediately following the accident, if Randolph wasn't doing physical therapy, he was sitting on the couch watching TV. (Doc. 51-7 at 122).

Plaintiffs' attempt to compare this fact pattern to the one presented in *Adams* is misguided. In that case, the Third Circuit addressed an appeal from a district court's grant of summary judgment in favor of defendants in a product liability case over an allegedly defective hip implant. *See Adams*, 943 F.3d 159. The Third Circuit concluded that "a jury could reasonably conclude Adams ascribed her pain to her own poor adjustment to the implant; it was only when her doctor discovered new information

'intraoperatively' that she would know the implant's disintegration, rather than her reaction to the implant, was causing her pain." *Id.* at 165. Conversely, in the instant matter, there is no dispute that Randolph's physical limitations were the direct result of the collision with Orozco-Pineda. While Diane may not have fully understood the extent of her claim, the severity of her husband's injuries, or the duration of his physical limitations, the injuries and their cause were immediately apparent. Accordingly, the court will dismiss Diane Thomas's claim as time-barred.

## IV.    **Conclusion**

Based on the aforesaid, the court finds that Plaintiffs have failed to present sufficient evidence to support their claims for punitive damages. The court also finds that Diane Thomas's loss of consortium claim was not brought within the statute of limitations period. Accordingly, Defendants motion for partial summary judgment (**Doc. 50**) will be **GRANTED**. Further, since the court did not rely on the contents of Defendants' reply brief in reaching its decision, Plaintiffs' first motion to strike (**Doc. 60**) will be **DENIED AS MOOT**.  An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**DATE: September 30, 2025**          **United States District Judge**
24-288-02

- 26 -