UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

Randolph Thomas, Bridgette :
Palmatierre, and Diane Thomas,
: CIVIL ACTION NO. 3:24-cv-288
Plaintiffs,
v. : (JUDGE MANNION)

Jorge Orozco-Pineda, *et al.*, :

Defendants. :

## MEMORANDUM

Pending before the court is Plaintiffs' motion for reconsideration filed on October 3, 2025. **(Doc. 83)**. In this instant motion and the accompanying brief in support (Doc. 84), Plaintiffs argue that the court should reconsider or amend its September 30, 2025, memorandum and order, (Docs. 81, 82), granting Defendants' motion for partial summary judgement. (Doc. 50). The parties have briefed the issues, and the matter is now ripe for disposition. For the reasons stated herein, the court will **DENY** Plaintiff's motion.

I. **Factual and Procedural Background**

The factual background of this case, well known to the parties at this stage, is outlined in the court's recent summary judgement memorandum. (Doc. 81). In sum, this case involves a motor vehicle collision in which Defendant Orozco-Pineda was driving a tractor-trailer on the highway before

colliding into the back of a pickup truck driven by Plaintiff Randolph Thomas, accompanied by his passenger, Plaintiff Bridgette Palmatierre. (Doc. 21). Orozco-Pineda was operating a commercial tractor-trailer owned by Defendant Lopez-Calleja, as a contracting agent of Defendant Food Haulers. *Id.*

On September 30, 2025, after reviewing materials submitted by the parties, the court granted Defendants' motion for partial summary judgement, finding that, *inter alia*, Plaintiffs had failed to present sufficient evidence to support their claims for punitive damages. (Docs. 81). Following the court's judgement, Plaintiffs filed the instant motion asking the court to reconsider its decision. On October 17, 2025, Defendants filed a brief in opposition, (Doc. 86), to which Plaintiffs filed a reply brief. (Doc. 88). On the same day, Plaintiffs filed their first motion for leave to supplement their reply brief with additional evidence, (Doc. 87), which the court granted as uncontested. (Doc. 95).

## II. Legal Standard

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which gives a party 28 days to move to alter or amend a judgement. Fed. R. Civ. P. 59(e). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly

discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of ... [n]or is it to be used to put forth additional arguments which could have been made but which the party neglected to make before judgment." *Waye v. First Citizen's Nat. Bank*, 846 F.Supp. 310, 314 (M.D. Pa. 1994) (citation omitted). Reconsideration of a judgment is an extraordinary remedy, and the court grants such motions sparingly. *D'Angio v. Borough of Nescopeck*, 56 F.Supp.2d 502, 504 (M.D. Pa. 1999).

### III.  Discussion

Plaintiffs' instant motion sets forth several arguments falling under Rule 59(e). First, Plaintiffs contend that newly obtained expert testimony provides evidence that highlights a factual error in the court's findings and also creates a genuine issue of material fact as to whether Defendant Orozco-Pineda was

traveling at an excessive speed prior to the collision. (Doc. 84, p.12). Second, Plaintiffs argue that the court erred as a matter of law in dismissing their claims of reckless supervision and training, relying solely on deficiencies in the pleadings and a heighted standard of "excessive speeding."

### A. Expert Testimony

In the court's September 30, 2025, memorandum granting Defendants' motion for partial summary judgement, the court concluded from the Motive data on the record that the tractor-trailer driven by Orozco-Pineda was last recorded traveling 26 mph before the "immediate halt" of the collision. (Doc. 81 at 15). The court based this finding on the fact that, at 2:17 am, the only recorded speed before 0 mph was 26 mph. However, Plaintiff argues that the court's findings are materially incorrect and directly conflict with the opinion of Defendants' own expert, Dr. Justin Schorr. (Doc. 84 at 4).

Specifically, Plaintiffs cite to three portions of Dr. Schorr's deposition to argue that the Motive data does not disprove their eyewitness, Mr. Stith, who testified that Orozco-Pineda was travelling nearly 80 mph during the moments leading up to the collision. First, Plaintiffs claim that Dr. Shorr "testified that the crash occurred at 2:16 am around the 45.3 mph entry", rather than 2:17 am around the 26 mph entry. (Doc. 84 at 8). Plaintiffs explain that the remaining seven recorded speeds from 2:16 am to 2:17 am reflect

- 4 -

the speed of the tractor-trailer *after* the collision, while Orozco-Pineda's trailer was decelerating for approximately 600 feet. *Id* at 7. Second, Plaintiffs claim that Dr. Schorr testified that the Motive data "contains an approximately two minute blind spot of unrecorded speeds just prior to the collision." *Id* at 8-9. Therefore, they argue, it is entirely plausible that Orozco-Pineda accelerated his tractor trailer to excessive speeds during this "two minute blind spot." Finally, Plaintiffs claim that the Motive data "can't be accepted as a scientific certainty in all respects" due to Dr. Shorr's testimony that the Motive data may have had a "drift or delay in recordings." *Id* at 11.

To the extent that the court incorrectly concluded that the collision occurred at 2:17 am rather than 2:16 am, the error is harmless to the court's findings. According to the deposition transcripts, Dr. Shorr stated, "We know that between the 45.3 and the 39.5 data step, the impact must have occurred." (Doc. 83-4 at 16). Dr. Shorr further stated, "We know the speed just prior to the collision was 45.3 miles per hour." *Id*. From this perspective, Orozco-Pineda was still significantly below the 65-mph speed limit, let alone traveling at 80 mph, seconds before the collision. Nevertheless, Plaintiffs' attempt to bolster this "new evidence" by mischaracterizing Dr. Shorr's testimony. Specifically, Plaintiffs claim that Dr. Shorr "conceded that as much

as two minutes of unrecorded speed data exist in the critical period before the impact." (Doc. 84 at 4). In reality, Dr. Shorr testified to the following:

> Q: The second 2:15 entry and the second speed taken at 2:16 is much as a minute and 58 seconds could have elapsed?
>
> Dr. Shorr: Yeah, I mean, I agree. I would say approximately two minutes would be the maximum that can elapse between two entries.

(Doc. 83-3 at 11). In other words, since there are gaps of unrecorded time in between each speed entry, there can theoretically be as much as one minute and 58 seconds between the speed entry from one minute to the speed entry from the next minute. However, the court acknowledged the potential gaps in the Motive data during its memorandum, and it is not "new evidence". (Doc. 81 at 14). The facts remain that, throughout the approximately 16 minutes that Orozco-Pineda was traveling on 1-81 leading up to the collision, Motive recorded roughly 70 speed entries, and not a single one exceeded the 65 mph speed limit. Dr. Shorr's testimony does not eliminate or reduce the speculative nature of Plaintiffs' arguments.

Regarding the argument that the Motive data can't be relied on in light of Dr. Shorr's testimony that it may contain a "drift or delay," Plaintiffs once again mischaracterize Dr. Shorr's testimony. During the exchange in the deposition cited by Plaintiffs, Dr. Shorr testified to following:

> Q: But [the Motive data] tells you the precise time of the impact, correct?
>
> Dr. Shorr: It tells us the time based on that device, sure.
>
> Q: But why doesn't that indicate the precise time of impact?
>
> Dr. Shorr: I'm not sure exactly where the clock is being obtained from. Devices tend to suffer somewhat clock drift over time so I'm not sure, you know, what the exact time would've been. It's - - I use it as an estimate, not an exact number.

(Doc. 83-4 at 3-4). As Defendants correctly point out in their opposition brief, Dr. Shorr's statement simply indicates that the timestamps recorded on the Motive Platform may not perfectly synchronize with the official global time. In other words, Motive's clock may reflect a time that is slightly different from the global clock. However, whether or not Motive's clock was perfectly aligned with the global time does not impact the court's analysis. In relation to the court's reasoning, the timestamps serve soley as reference points to determine the number of speed entries recorded within each minute leading up to the collision.

Finally, Plaintiffs submit deposition testimony from Defendants' expert, Ronald Baade, and suggest that it "further undermine[s] the basis for summary judgement regarding punitive damages.' (Doc. 88 at 8-9). They argue that Baade's testimony "confirms" that Mr. Stith's testimony—that Orozco-Pineda was traveling approximately 80 mph seconds prior to the

- 7 -

collision—"cannot be scientifically refuted". *Id.* Once again, the fact that Defendants' expert cannot provide a "scientific basis" to disprove Mr. Stith's testimony does not render the supporting evidence any less speculative.

### B. Legal Error

Turning to Plaintiffs' next argument, they contend that the court's dismissal of their direct claims for punitive damages against Food Haulers and Lopez-Calleja based on deficiencies in the amended complaint was inconsistent with its prior statements, where it stated that such claims would be analyzed based on the evidentiary record under Rule 56. Specifically, during the July 29, 2025, oral argument, the court stated, "I don't have a problem with the idea that whenever we decided at the motion to dismiss stage was good enough for that period, but now we're at a different period with a different standard and more evidence and facts to look at." (Doc. 87-4 at 2-3).

However, as the court stated in its memorandum granting Defendants' motion for partial summary judgement, Defendants' motion to dismiss "was directed at the punitive claims against Orozco-Pineda and the remaining Defendants via *respondeat superior.*" (Doc. 81 at 18-19). Plaintiffs did not allege reckless conduct directly against Food Haulers and Lopez-Calleja, either in their amended complaint or in their brief in opposition to Defendants'

motion to dismiss. Thus, the transcript does not provide a basis for reconsideration of the court's findings.

Finally, Plaintiffs argue that the court misapplied the law by holding that Food Haulers and Lopez-Calleja could be held liable for reckless supervision or training only if Orozco-Pineda was "speeding excessively." (Doc. 84 at 13). Plaintiffs argue that, even if Orozco-Pineda was driving within the speed limit prior to the collision, Food Haulers and Lopez-Calleja could still be held liable if Orozco-Pineda was "simply driving too fast for the conditions," as this would establish a clear nexus between Orozco-Pineda's speed history and the collision. *Id.*

However, this argument was previously raised in Plaintiffs' brief in opposition, (Doc. 53 at 17), and was rejected by the court in its subsequent memorandum. (Doc. 81 at 15-16). The court concluded that there was no nexus between Orozco-Pineda's prior speeding record and the conduct that caused the accident after determining that Plaintiffs failed to sufficiently support their claim of excessive speeding and rejecting their argument that Orozco-Pineda was driving too fast for the conditions. (Doc. 81 at 15, 20). Therefore, the court will not revisit an argument that has already been disposed of.

## IV. Conclusion

Accordingly, Plaintiffs' motion for reconsideration (**Doc. 83**) will be **DENIED**. An appropriate order follows.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**MALACHY E. MANNION**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**

**DATE:** 2/13/26
24-288-03